COMMONWEALTH *vs.* TREVOR NEVERSON. No. 92-P-408. September 10, 1993. *Homicide. Practice, Criminal*, Required finding, Double jeopardy. *Witness*, Expert. *Evidence*, Judicial discretion.

At the defendant's first trial for the murder of his fifteen month old stepdaughter, the judge ordered a required finding of not guilty as to so much of the indictment as charged murder in the first degree and submitted the case to the jury on murder in the second degree and manslaughter. The case ended in a mistrial, the jury being unable to agree. The defendant sought to block a second trial on prior jeopardy grounds, his contention

---

being that the evidence at the first trial was insufficient to support a finding of guilt beyond a reasonable doubt. See *Commonwealth* v. *Ginnetti*, 400 Mass. 181, 182 (1987). That contention was rejected by the Supreme Judicial Court in *Neverson* v. *Commonwealth*, 406 Mass. 174, 178-179 (1989). The defendant, now retried and found guilty of manslaughter, appeals from his conviction.

1. His first contention is that his motion for a required finding of not guilty was improperly denied because the evidence failed to establish that the injuries that caused death were inflicted during the period 2:00 P.M. to 11:30 P.M., when according to the evidence the baby was in his sole custody. The evidence on this point was substantially the same as that at the first trial (described at 406 Mass. at 178). The baby was reported dead by the parents shortly after 7:00 A.M. the next morning. The medical examiner, Dr. Loren J. Mednick, arrived at 8:30 A.M., determined at that time that advanced rigor mortis was present ("two plus, three plus" range), indicating, Dr. Mednick testified, that the baby had been dead from six to twelve hours; more specifically, that the baby had died as early as 8:35 P.M. and at the latest at 2:35 A.M. The medical examiner testified that, to a reasonable degree of medical certainty, he could estimate that death occurred prior to the midpoint in that range, which would be approximately 11:35 P.M., and that the child's extensive injuries (causing hemorrhaging in major internal organs) had been suffered approximately two to three hours prior to death. Dr. George Kastas gave as his opinion that the injuries had been inflicted no more than two hours prior to death, most likely one hour; but in his view the child had been dead ten to twelve hours before Dr. Mednick's initial examination at 8:30 A.M. Thus, despite the relatively slight variations between the experts, both placed the time that the injuries were inflicted before 11:30 P.M., when, according to the testimony, the baby's mother returned home from work. Neither doctor's opinion seems to have turned on the milk in the baby's stomach, which, according to Dr. Mednick, was probably drunk no more than an hour or so before death. The pivotal factor, as we read their testimony, was the condition (swelling, etc.) of various lacerations and abrasions that were inflicted by (in their view) blunt force blows inconsistent with household accident. Moreover, as we read the cross-examination of Dr. Mednick, he did *not* affirm that to him a reasonable medical certainty meant "simply more probable than not." His somewhat vague response to that question ("That is my conclusion based upon my findings") probably would have been explored more fully if the defendant had preserved his rights by filing a motion to strike the Mednick opinion (see *Coburn* v. *Moore*, 320 Mass. 116, 120-121 [1946]; *Pataskas* v. *Judeikis*, 327 Mass. 258, 260 [1951]), but we note that the doctor emphatically rejected the thought that a fifty-one percent likelihood might qualify, so it is likely that counsel simply elected not to pursue the point further. In sum, we do not see that the evidence at the second trial was weaker in any material respect than the evidence at the

first trial that was held sufficient in *Neverson* v. *Commonwealth, supra.* The motion for a required finding of not guilty was correctly denied.

2. There was no error in the judge's refusal to allow as expert testimony the opinion of Dr. James V. Masi, a professor of physics and biomechanics, who was prepared to give as his opinion that a child falling from a sixty-three-inch height (apparently the height of a bunk bed used by the deceased child's three year old brother) would strike the floor with a force of 175 to 200 Gs and would probably not survive. A judge has wide discretion in evaluating an expert's qualifications. See *Commonwealth* v. *Maltais*, 387 Mass. 79, 93 (1982); *Commonwealth* v. *Weichell*, 390 Mass. 62, 78 (1983), cert. denied, 465 U.S. 1032 (1984); *Venini* v. *Dias*, 5 Mass. App. Ct. 695, 697 (1977). Here the judge properly determined that the professor had expertise in physics and that he could testify to the speed of the collision of a falling child with the floor but had virtually no experience (none in the case of children) in evaluating the medical consequences of falls from varying heights. His only studies seemed to involve a five-foot, five-inch man who falls on his head from a standing position, who would likely incur injuries that would be (according to the professor) "at the borderline of survivability." The professor himself acknowledged that, "[f]rom the medical point of view, I have no expertise." As the judge's exclusion of the medical-consequences portion of the professor's proposed testimony was clearly proper for the reason the judge gave, there is no need to consider the power of the judge to exclude expert opinion that contains obvious rubbish. See, e.g., *Reed* v. *Canada Dry Corp.*, 5 Mass. App. Ct. 164, 165-166 (1977).

*Judgment affirmed.*

*Charles K. Stephenson* for the defendant.
*Elizabeth Dunphy Farris*, Assistant District Attorney, for the Commonwealth.