**Trevor NEVERSON Petitioner,**

v.

**Lynne BISSONNETTE, William Cudworth, Warden of the Adult Correctional Institution, Stephen Farquharson, Frederick MacDonald, Immigration and Naturalization Service, Respondents.**

No. CIV.A. 98–11719–WGY.

United States District Court, D. Massachusetts.

Feb. 4, 2003.

---

John M. Thompson, Thompson and Thompson, PC, Springfield, MA, for Petitioner.

Natalie S. Monroe, Attorney General's Office, Boston, MA, Brenda M. O'Malley, Dept of Justice, Civil Division, Washington, DC, for Respondents.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

### A. Procedural Posture

Trevor Neverson ("Neverson") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 1990 conviction in the Massachusetts Superior Court, sitting in and for the County of Hampden, for manslaughter.

On September 16, 1987, a Hampden County grand jury indicted Neverson for the murder of his infant stepdaughter. Neverson's first trial was held in February of 1989, and a mistrial was declared in that case because of a hung jury. Resp't Mem. in Opp'n [Docket No. 59] at 1–2. On February 22, Neverson moved to dismiss the indictment based on his claim of insufficient evidence, but the trial judge denied the motion. *Id.* at 2. Neverson then appealed this decision and was denied. *Id.* He then appealed the denial to the Massachusetts Supreme Judicial Court, but the further appeal was denied. *Neverson v. Commonwealth,* 406 Mass. 174, 546 N.E.2d 876 (1989).

Neverson's second trial was held in July of 1990, and he properly made motions for acquittal at the close of the government's evidence and at the close of all the evidence. Resp't Mem. in Opp'n at 2. On July 24, 1990, the jury returned a verdict of guilty on the count of manslaughter, and Neverson was sentenced the next day to serve sixteen to nineteen years in prison. *Id.* Neverson filed a timely notice of appeal.

The Massachusetts Appeals Court affirmed Neverson's conviction on September 10, 1993. *Commonwealth v. Neverson,* 35 Mass.App.Ct. 913, 619 N.E.2d 344 (1993). On October 25, 1993, the Supreme Judicial Court denied Neverson's application for leave to obtain further appellate review. *Commonwealth v. Neverson,* 416 Mass. 1106, 622 N.E.2d 1364 (1993) (table). Neverson moved for a new trial on July 11, 1997, and that motion was denied on July 30, 1997. Resp't Mem. in Opp'n at 3. The Massachusetts Appeals Court affirmed the denial of Neverson's motion for a new trial in an unpublished opinion on June 23, 1998. *Commonwealth v. Neverson,* 45 Mass.App.Ct. 1104, 699 N.E.2d 28 (1998) (table). On July 27, 1998, the Supreme Judicial Court denied Neverson further appellate review. *Commonwealth v. Neverson,* 700 N.E.2d 544 (1998) (table).

On August 28, 1996, Neverson filed his first petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Upon Respondent's motion, the petition was dismissed for failure to exhaust state remedies. Resp't Mem. in Opp'n at 3.

Neverson filed the instant petition seeking habeas relief on August 17, 1998. In October 1998, respondent moved to dismiss the petition as being time-barred under the habeas statute. Pursuant to the motion, the district court issued an order dismissing the petition on December 15, 1999. *Id.* Within its order, the district court granted a certificate of appealability, and Neverson filed for appeal with the First Circuit on January 13, 2000. *Id.* at 4.

After Neverson was appointed appellate counsel, the First Circuit ruled that, in accordance with recent Supreme Court jurisprudence, the time during which Neverson's first habeas petition was pending did not toll the limitations period, but the First Circuit remanded the case to this Court to determine whether equitable tolling was available. *Neverson v. Bissonnette,* 261 F.3d 120, 125–27 (1st Cir.2001). On June 27, 2002, this Court equitably tolled the limitation period for this petition. *Neverson v. Bissonnette,* No. 98–11719, slip op. at 10 (D.Mass. July 26, 2002). Subsequently, Neverson and the respondent

filed briefs respectively in support of and in opposition to the habeas petition. In addition, the respondent has moved to dismiss the petition for lack of jurisdiction and failure to state a claim.

### B. Facts

Neverson's arrest and subsequent prosecution arose from the death of his fifteen-month old stepdaughter. *Commonwealth v. Neverson*, 35 Mass.App.Ct. 913, 619 N.E.2d 344 (1993). Medical examiners determined the cause of death to be "blunt force trauma." *Neverson v. Commonwealth*, 406 Mass. 174, 178, 546 N.E.2d 876 (1989). The victim's injuries included fractured ribs, abrasions and contusions, and various internal injuries. Resp't Mem. in Opp'n at 5.

On appeal from his conviction, Neverson argued that the evidence was insufficient to show that the injuries were sustained while the baby was in his sole custody. 35 Mass.App.Ct. at 914, 619 N.E.2d 344. The parents reported the baby dead shortly after 7:00 A.M. *Id.* The medical examiner, Dr. Loren J. Mednick ("Mednick"), estimated the time of death to be approximately 11:35 P.M. the previous night and that the fatal injuries were suffered approximately two to three hours prior to death. *Id.* Another expert, Dr. George Katsas ("Katsas"), testified that the injuries were inflicted no more than two hours prior to death, but both doctors agreed that the injuries were inflicted before 11:30 P.M., the time at which the baby's mother returned home from work. *Id.* The government also adduced evidence that the injuries were not the result of a "household accident." *Id.*

At trial, the judge refused to allow as expert testimony the opinion of Dr. James V. Masi ("Masi"). *Id.* at 915. Masi, a professor of physics and biomechanics, was prepared to testify that a child falling from a height of sixty-three inches—ostensibly the height of a bunk bed used by the baby's older brother[1]—would probably not survive the fall. *Id.* While the judge ruled that Masi had expertise in physics and could testify as to the speed of the collision from a falling child, he also ruled that Masi had insufficient experience in evaluating the medical consequences of falls from various heights. *Id.* The Massachusetts Appeals Court, in affirming the trial court, noted Masi's admission that "from the medical point of view, [he had] no expertise." *Id.* Indeed, the state courts went so far as to impugn Masi's purported testimony as containing "obvious rubbish." *Id.*

## II. DISCUSSION

As a preliminary, but crucial, matter, confusion and disagreement exists as to the precise nature of Neverson's claims in this habeas action. Much of the confusion stems from the *pro se* pleadings and briefs Neverson has filed in this case and in the state proceedings. In his Petition for Writ of Habeas Corpus [Docket No. 1], Neverson incorporates his Application for Leave to Obtain Further Appellate Review ("ALOFAR") and states that it forms the basis of his claims in this habeas action. His ALOFAR, a copy of which is contained in the Respondent's Supplemental Answer as Exhibit 6, explicitly presents five broad issues for appeal, but also contains a provision that incorporates his entire appellate brief for consideration. Resp't Supplemental Answer [Docket No. 57], Ex. 6 at 2. The five explicit issues for habeas review contained in the ALOFAR are: (1) the Appeals Court's decision is "arbitrary and capricious" because the District Attorney is not a party as she "waived all issues in the Superior Court"; (2) the trial court "abused its discretion" by failing to hold

---

1. Apparently, the baby's seven-year-old stepbrother was also at home during the alleged incident. Resp't Supplemental Answer [Docket No. 57], Ex. 3 at 13.

an evidentiary hearing on Neverson's motion for a new trial; (3) Neverson's trial and appellate counsel provided ineffective assistance; (4) Neverson was denied his constitutional "right of confrontation and compulsory process"; and (5) Neverson's conviction violated the supremacy clause of the constitution. *Id.* at 3.

In his Memorandum in Support of his Petition, which was prepared by counsel, however, Neverson appears to abandon some of the claims articulated in his ALOFAR and to recast others. In his memorandum, Neverson states:

> Neverson's petition asserts five grounds for relief: (1) That his right to present his defense was violated by (a) arbitrary exclusion of the testimony of Dr. James V. Masi, in (b) a decision which invaded the jury's fact-finding function and (c) violated his right to confrontation of adverse witnesses and compulsory process; (2) That he received ineffective assistance of trial counsel; (3) That he received ineffective assistance of appellate counsel; (4) That the evidence was constitutionally insufficient to support his conviction; and (5) That the state courts violated his right to due process and equal protection in denying his Rule 30 motion without providing him an evidentiary hearing.

Pet'r Mem. in Supp. [Docket No. 63] at 1–2.

Because his Habeas Petition and ALOFAR were filed *pro se*, Neverson is entitled to some latitude in the interpretation of his claims. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (noting that courts should read *pro se* pleadings less strictly

than pleadings drafted by lawyers); *Prou v. United States,* 199 F.3d 37, 42 (1st Cir. 1999) (applying a more tolerant standard of particularity to a *pro se* motion for 28 U.S.C. § 2255 habeas relief). A court's solicitous discretion, however, is not unfettered. *See, e.g., Boivin v. Black,* 225 F.3d 36, 43 (1st Cir.2000) (stating that *pro se* litigants are not exempt from procedural rules); *United States v. Michaud,* 925 F.2d 37, 41 (1st Cir.1991) ("Even *pro se* petitioners must plead specific facts backing up their claims."). This Court will interpret Neverson's *pro se* pleadings liberally to construe his claims for the purposes of this adjudication.

The parties appear to agree that the ALOFAR states claims respecting Neverson's rights to confrontation and compulsory process, ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and the state court's failure to provide an evidentiary hearing.[2] The documents, however, contain inconsistencies. First, with respect to the first and fifth explicit "claims" of the habeas petition (derived from the ALOFAR), Neverson does not advance them in his memorandum drafted by counsel—indeed, Neverson never acknowledges in that memorandum that claims respecting the District Attorney's standing or the Supremacy Clause exist. Because the ALOFAR contains suggestions of at least one other claim not specifically enumerated in its introduction, as discussed below, this Court—employing the liberal standard applicable to *pro se* litigants—will ignore the statements labeled as "points" 1 and 5 in the ALOFAR for purposes of construing Neverson's claims.[3]

---

**2.** Therefore, points 2, 3, and 4 of Neverson's ALOFAR appear to be in relative harmony with claims 1, 2, 3, and 5 of Neverson's memorandum. *See* Resp't Supplemental Answer, Ex. 6 at 3; Pet'r Mem. in Supp. at 1–2.

**3.** In so doing, this Court does not rule that the *pro se* claims are abandoned or waived. Indeed, this Court does not treat them as "claims" at all. Rather, in applying liberalized standards of proper pleading, it credits the statements as a mere byproduct of *pro se*

Second, Neverson's memorandum states that another ground for relief (labeled ground 4) asserted in his petition is the constitutional insufficiency of the evidence. Pet'r Mem. in Supp. at 1–2. Although not explicitly, the ALOFAR makes reference to the sufficiency of the evidence and obliquely argues its insufficiency. Resp't Supplemental Answer, Ex. 6 at 11–13. Furthermore, the Respondent concedes that sufficiency of the evidence was a claim previously adjudicated by the state courts. Resp't Mem. in Opp'n at 23–25. This Court will treat the claim as properly pleaded and ripe for adjudication in this action. For purposes of clarity in this habeas action, therefore, this Court will address Neverson's claims as articulated in his Memorandum in Support of the Petition.

### A. Right of Confrontation and Compulsory Process

Neverson argues that the state trial judge violated his rights to confrontation and compulsory process under the Sixth Amendment through the "arbitrary exclusion" of Masi's testimony. The Respondent contends that the claim is not properly before this Court because Neverson failed to exhaust it and that, even if the claim is exhausted, it should fail on the merits.

### 1. Exhaustion

■■■ Neverson's claim regarding confrontation and compulsory process has been exhausted and is properly before this Court. A federal court may consider questions on habeas review only after the "power of the highest state court in respect of such questions" has been exhausted. *Mele v. Fitchburg Dist. Court*, 850 F.2d 817, 819 (1st Cir.1988), *quoting United-*

ed States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17, 46 S.Ct. 1, 70 L.Ed. 138 (1925); 28 U.S.C. § 2254(b) (2000). Respondent argues that "point" 4 in Neverson's ALOFAR refers to a denial of confrontation and compulsory process only with respect to Katsas' testimony, not Masi's.[4] Resp't Mem. in Opp'n at 9–10. Respondent contends that, although Neverson argued the point in his appellate brief, he "abandoned" this argument with respect to Masi in the ALOFAR. *Id.* at 10. Furthermore, while conceding that Neverson properly raised the issue before the state appeals court, Respondent correctly states that "[i]t is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present—*or do his best to present*—the issue to the state's highest tribunal." *Mele*, 850 F.2d at 819 (emphasis added).

■■■ In his *pro se* ALOFAR, however, Neverson did "his best to present" the issue to the Supreme Judicial Court. A habeas petitioner must demonstrate that he presented a claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." *Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir.1994). The First Circuit has held that there are "myriad ways" a petitioner may fairly present an issue for exhaustion purposes. *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir.1997). This can be accomplished by "trappings" such as specific constitutional language constitutional analogy, federal precedent, and other similar tactics. *See id.* In this case, Neverson's ALOFAR does not mention Masi specifically. Unlike the circumstances presented in *Mele*, however, Neverson's ALOFAR incorporates his appeals

---

pleading and looks elsewhere in the ALOFAR for Neverson's other habeas claims.

4. Neverson abandons his confrontation claim with respect to Katsas' reliance on autopsy photographs. Pet'r Mem. in Supp. at 9 n. 8.

brief by reference, which argues that very point. Resp't Supplemental Answer, Ex. 1 at 18–21. Respondent does not argue that Neverson failed to present a Sixth Amendment confrontation claim; he merely argues that Neverson failed to discuss the issue with respect to Masi in the ALOFAR. Neverson incorporated his discussion of Masi's testimony by reference to his appellate brief. A reasonable jurist would have been alerted to Neverson's claim as presented in the ALOFAR. As a *pro se* petitioner, Neverson cannot be held to standards equivalent to those binding an attorney. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (noting that courts should read *pro se* pleadings less strictly than pleadings drafted by lawyers). Although Neverson's ALOFAR may be deficient in its completeness, it sufficiently and fairly presented his claim of confrontation violations for exhaustion purposes.

## 2. The Merits

■ Notwithstanding the exhaustion issue,[5] Neverson's claim regarding his rights to confrontation and compulsory process must fail. While Neverson correctly states that the Sixth Amendment right to present a defense is firmly established under *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) and its progeny, that right does not abrogate the trial judge's role as gatekeeper at trial. The First Circuit has held that "[h]abeas relief is unavailable to persons solely on the basis of alleged errors in evidentiary rulings." *Salemme v. Ristaino,* 587 F.2d 81, 85 (1st Cir.1978).

Although Neverson frames the question as a Sixth Amendment issue, the issue is merely one of state evidentiary law. Massachusetts law requires a trial judge to determine whether testimony is relevant, probative, and not unfairly prejudicial. *See, e.g., Anthony's Pier Four, Inc. v. HBC Assoc.,* 411 Mass. 451, 477, 583 N.E.2d 806 (1991); *Commonwealth v. D'Agostino,* 344 Mass. 276, 279, 182 N.E.2d 133 (1962); *Commonwealth v. Burke,* 339 Mass. 521, 534, 159 N.E.2d 856 (1959), *overruled on other grounds by Commonwealth v. Beldotti,* 409 Mass. 553, 567 N.E.2d 1219 (1991). This is not a case in which the trial judge prohibited a defendant from calling any witnesses. Indeed, this is not a case in which the trial judge prohibited a defendant from calling expert witnesses. In this case, the trial judge made a careful, reasoned ruling with respect to the qualifications and opinion of one particular expert and determined that Masi would not be helpful to the trier of fact. The trial judge merely fulfilled his duty, as required by Massachusetts law. The trial judge was entirely within his gatekeeping province in prohibiting Masi's testimony as an expert. *See Commonwealth v. Lanigan,* 419 Mass. 15, 24–26, 641 N.E.2d 1342 (1994) (adopting standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) as the evidentiary law of the Commonwealth of Massachusetts); Melissa Bayer Tearney & Janie Lanza Vowles, *Theresa Canavan's Case: SJC Rules on Admissibility of Expert Testimony,* 45–Feb B. B.J. 12 (2001) (same); *see also* William G. Young, John R. Pollets, & Christopher Poreda, *Massachusetts Evidence* (19 Mass. Practice Series) § 702.7, at 490–498 (1998 & Supp.2002); Linda Sandstrom Simard & William G. Young,

---

**5.** Even assuming that Neverson failed to exhaust his claims, section 2254 and the Antiterrorism and Effective Death Penalty Act ("AEDPA") authorize this Court to deny the claims on the merits. A petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (2000).

*Daubert's Gatekeeper: The Role of the District Judge in Admitting Expert Testimony*, 68 Tul. L.Rev. 1457 (1994).

The First Circuit recently held that a state judge's exclusion of a defense witness was a violation of a habeas petitioner's Fourteenth Amendment right of due process. *Ellsworth v. Warden*, 318 F.3d 285 (1st Cir.2003). In *Ellsworth*, the petitioner was convicted in state court of committing sexual abuse. *Id.* The victim was an emotionally disturbed child at a residential school and treatment facility for children with emotional, behavioral, and neurological impairments, at which the petitioner was employed. *Id.* At trial, the petitioner had proffered that testimony from another counselor at the facility would show that the victim had made false accusations of sexual voyeurism against other children at the facility. *Id.* In ruling that the trial judge erred in excluding this testimony, the First Circuit reasoned that the proffered testimony went directly to exposing the victim's credibility. *Id.*

The holding in *Ellsworth*, however, is inapposite here. First, the victim in *Ellsworth*, an emotionally disturbed young boy, provided the only evidence of abuse; no other corroborating evidence was adduced. *Id.* Second, the First Circuit said it was a "significant" factor that the excluded testimony went to exposing bias and motivation to lie. *Id.* In the instant case, however, the excluded testimony was a single expert witness who possessed neither first-hand knowledge of the facts of the case, nor any information that would expose the potential bias or motivation to lie of any witness. Hence, the state courts' affirmation of the judge's ruling in the case at bar was consonant with the strictures of due process and the Sixth Amendment.

■ This claim, therefore, presents only an issue of state evidentiary law, not federal constitutional law. Errors of state law do not provide a basis for federal relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Hence, even assuming the trial judge erred under Massachusetts law in excluding Masi's testimony—a proposition this Court believes strains the bounds of common sense—the Court must deny Neverson's claim.

### B. Ineffective Assistance of Trial Counsel

### 1. Construing the Grounds for the Claim

In his brief Neverson states that there are six ways in which his trial counsel was ineffective, but Neverson mischaracterizes the issues for review.

■ Some of the grounds on which Neverson relies in his brief are procedurally defaulted claims and are unreviewable by this Court. The Supreme Court has held that "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review … is barred unless the prisoner can demonstrate cause for the default and actual prejudice …." *Coleman v. Thompson*, 501 U.S. 722, 724, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Berthoff v. United States*, 308 F.3d 124, 127–28 (1st Cir.2002). In this case, Neverson's appeal was made pursuant to a denial of a motion for a new trial under Massachusetts Rule of Criminal Procedure 30. In pertinent part, Rule 30 states that any grounds for relief not raised in the motion "are waived unless the judge in the exercise of discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion." Mass. R.Crim. P. 30(c)(2). Although he mentioned them in his appellate brief, Neverson did not allege in his Rule

30 Motion that counsel's failure to object to certain statements by the prosecutor or his failure to elicit certain damaging testimony from the medical examiner on cross-examination were grounds for his ineffective assistance of counsel claim.[6] *See* Resp't Supplemental Answer, Ex. 2 at RA 3–5. According to Rule 30, these grounds are waived and neither the motion judge, nor the Appeals Court, even suggested that such claims were revived at any point. Neverson makes no averment to the contrary.[7] Under *Coleman,* therefore, these grounds are procedurally defaulted.

 These claims, therefore, are not reviewable unless Neverson can show cause and prejudice. To show cause, Neverson must establish that "some objective factor external to the defense" impeded his ability to raise the issue at the appropriate time, as required by the state procedural rule. *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546, *quoting Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Neverson, in his habeas brief, refers to his *pro se* status during the state proceedings as the cause of any deficiencies in his pleadings and briefs. Neverson, however, falls victim to the theoretical sword he has unsheathed. Although he argues, implicitly, that his *pro se* status impeded his ability to raise the disputed grounds in the original pleading, he *was* able to raise those grounds on appeal as a *pro se* appellant. Mr. Neverson has shown himself to be a resourceful petitioner, and this Court is satisfied that his *pro se* status was not a sufficient objective impediment, given that it did not impede him from trying to raise the issue on appeal. Furthermore, while it is true that a *pro se* litigant is not held to the standards of an

attorney, he may not roam freely beyond the procedural walls of the law. *See, e.g., Boivin v. Black,* 225 F.3d 36, 43 (1st Cir. 2000); *Hurney v. Carver,* 602 F.2d 993, 995 (1st Cir.1979). Because Neverson cannot show cause, this Court need not address the prejudice issue. These other grounds for relief, therefore, are barred.

In summary, the two remaining grounds for Neverson's ineffective assistance of counsel claim properly presented for review are: (1) counsel's alleged failure to present testimony from Masi or any medical expert for the defense; and (2) counsel's alleged failure to move to strike certain testimony from a government witness on grounds that it was based on probabilities. Pet'r Mem. in Supp. at 7–8. Neverson's claims are without merit.

### 2. Standards for Habeas Review

 As a preliminary matter, Neverson argues that resolution of his ineffective assistance claims requires an evidentiary hearing. Under the revised section 2254, "a determination of a factual issue made by a State court shall be presumed to be correct" and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (2000). Furthermore, this Court shall not hold an evidentiary hearing on a claim unless a petitioner shows that his "claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2) (2000). Ineffective as-

---

**6.** Neverson labeled these as "trial issues" 1, 2, and 3 in his habeas brief. Pet'r Mem. in Supp. at 7–8.

**7.** Neverson only claims that it is "impossible to determine" from the Appeals Court's cur-

sory opinion whether it deemed them waived. According to Rule 30, however, they are waived, unless affirmatively revived or otherwise permitted. Mass. R.Crim. P. 30(c)(2). Pet'r Mem. in Supp. at 21.

sistance of counsel is clearly not a "new rule of constitutional law." Moreover, any relevant facts respecting the ineffective assistance of counsel claims are present in the trial transcript, which Neverson could obtain through "due diligence." Hence, no evidentiary hearing is warranted.[8]

■ Neverson's two remaining ineffective assistance of trial counsel claims have been exhausted and are properly before this court. Although Neverson did not raise these claims in the original appeal from his conviction, he raised them in his motion for a new trial and in his subsequent appeals. Because the Appeals Court adjudicated Neverson's claims on the merits, this Court must review its determination using the deferential standard outlined by the habeas statute, as amended by AEDPA. Under this provision, this Court cannot grant habeas relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2000).

■ A state court decision is contrary to clearly established federal law only if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In reviewing Neverson's ineffective assistance claims, the Appeals Court cited the standard established in *Commonwealth v. Saferian*, which mandates inquiry as to "whether there has been serious incompetency, inefficiency, or inattention of counsel—behav-

ior of counsel falling measurably below they [sic] which might be expected from an ordinary fallible lawyer—and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence [sic]." 366 Mass. 89, 96, 315 N.E.2d 878 (1974). The federal standard for ineffective assistance examines whether defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth amendment" and whether counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The First Circuit has held repeatedly that the Massachusetts and federal standards for ineffective assistance claims are equivalent. *See, e.g., Stephens v. Hall*, 294 F.3d 210, 214–15 (1st Cir.2002). Furthermore, the facts presented in this case are not materially indistinguishable from any Supreme Court cases in which the assistance of counsel was ruled ineffective. The Appeals Court's decision, therefore, was not contrary to clearly established federal law.

Despite Neverson's various protestations, the Appeals Court's decision was also not an unreasonable application of clearly established federal law. A state court decision is deemed unreasonable when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. The First Circuit has explained that the appropriate inquiry is whether the state court's application of law was objectively unreasonable, that is, whether it had " 'some increment of incor-

---

**8.** Furthermore, the presumption of correctness as to state court findings of fact required by section 2254(e)(1) applies to factual findings *implicit*—as well as explicit—in the state

court's ruling. *See LaVallee v. Delle Rose*, 410 U.S. 690, 692, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); *Combs v. Coyle*, 205 F.3d 269, 277 (6th Cir.2000).

rectness beyond error' . . . great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall*, 303 F.3d 24, 36–37 (1st Cir.2002) (citations omitted).

In assessing the reasonableness of the Appeals Court's analysis, this Court must look to the underlying constitutional standard for claims of ineffective assistance of counsel. *See, e.g., Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.2001). *Strickland* supplies the standard here, which comprises two prongs: performance and prejudice. *See, e.g., Ouber v. Guarino*, 293 F.3d 19, 27 (1st Cir.2002). Neverson argues that an assessment of the reasonableness of the Appeals Court's application of federal law is impossible here, because the Appeals Court incorporated arguments from the Commonwealth's brief, en masse, as the basis of its decision, without articulating the precise reasons for its holding. The court stated that

> [f]or substantially the reasons set forth in the Commonwealth's brief at pages twenty-four through forty-five, in particular the failure of the defendant to show that his trial or appellate counsel was ineffective or that better work by them would have accomplished something material for him . . . the motion for a new trial was rightly denied.

*Commonwealth v. Neverson*, 45 Mass.App. Ct. 1104, 699 N.E.2d 28 (1998) (table). Generally, courts should avoid incorporating counsel's arguments by reference in their opinions, but it may be unavoidable—from time to time—given the tremendous stresses state court systems endure amid a deluge of cases. *See, e.g., In re Las Colinas, Inc.*, 426 F.2d 1005, 1008 (1st Cir. 1970) (noting that there is a "clash of interests" between "efficient administration" and the "undeniable right of losing counsel to be assured that his position has been thoroughly considered").[9] Although the practice of adopting, by reference, the arguments from prevailing counsel's memorandum of law may make a habeas court's task of applying the deferential standards set out in section 2254 and *Williams* more difficult, they do not preclude proper habeas review and this Court will rule on Neverson's ineffective assistance claims based upon the record before it. *See, e.g., Commonwealth v. Harmon*, 410 Mass. 425, 430, 573 N.E.2d 490 (1991) (noting that the standard of appellate review does not change even though the judge adopted findings of fact from the Commonwealth's memorandum of law). *Commonwealth v. DeMinico*, 408 Mass. 230, 238, 557 N.E.2d 744 (1990) (stating that the findings of fact that the trial judge adopted verbatim from the Commonwealth's memorandum are still "formally" the judge's and "will stand

---

**9.** The Massachusetts Supreme Judicial Court, however, has not looked with favor upon the practice of trial judges adopting verbatim findings or conclusions by prevailing counsel. *See, e.g., Commonwealth v. Harmon*, 410 Mass. 425, 430, 573 N.E.2d 490 (1991) (noting that the Supreme Judicial Court of Massachusetts does "not recommend th[e] practice" of a judge adopting findings of fact from the Commonwealth's memorandum of law); *Commonwealth v. DeMinico*, 408 Mass. 230, 238, 557 N.E.2d 744 (1990) (stating that the Supreme Judicial Court of Massachusetts has "criticized this practice"); *Lewis v. W.C. Emerson*, 391 Mass. 517, 524, 462 N.E.2d 295 (1984) (noting that the Supreme Judicial Court of Massachusetts has "previously cautioned against a trial judge's verbatim adoption of a litigant's proposed findings and conclusions"). Although here the Massachusetts Appeals Court adopted the *arguments* of the Commonwealth's counsel (and not necessarily the findings of fact or conclusions of law), the same issues with this practice arise. Specifically, "the independence of the court's thought process may be cast in doubt" when the arguments or "findings proposed by one of the parties winds up as the court's opinion." *In re Las Colinas, Inc.*, 426 F.2d at 1009 (1970).

if supported by evidence"), *quoting United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

The Court now turns to the arguments adopted by the Appeals Court, as they appeared in the Commonwealth's brief, to determine whether the Appeals Court was objectively unreasonable in applying the law to the facts of this case.

### 3. Neverson's Substantive Ineffective Assistance Claims

#### a. Failure to Present Testimony from a Medical Expert for the Defense

██ Not only was the Appeals Court's determination with respect to counsel's alleged failures to present certain expert testimony not objectively unreasonable, it was manifestly reasonable. Neverson claims that his counsel was ineffective in not presenting the testimony of Masi or, alternatively, in not presenting the testimony of any defense "expert." First, adopting the Commonwealth's argument, the Appeals Court ruled that counsel's decision not to present Masi's testimony (which the trial judge had labeled "obvious rubbish") did not constitute deficient performance by counsel and was a logical strategic decision. Resp't Supplemental Answer, Ex. 3 at 30–31. Such a determination by counsel was, indeed, quite reasonable, given the trial judge's strong admonition.

██ Second, the Appeals Court ruled that, with respect to counsel's decision not to procure additional medical experts to support Neverson's defense, the defendant's motion offered nothing but " 'unsubstantiated speculation' that the defendant could have obtained expert testimony upon

the asserted issues .…" *Id.* at 32. Further, the Appeals Court ruled that Neverson could proffer only his own conclusory statements about certain scientific aspects of the evidence and that he failed to offer any other witness who would be willing to testify as to the "conclusions" that Neverson drew himself. Whether to call certain witnesses and whether to put on a defense at all are strategic decisions generally reserved for counsel. *See, e.g., Lema v. United States*, 987 F.2d 48, 54–55 (1st Cir.1993) (ruling that counsel's decision not to call an expert witness was not objectively unreasonable).[10]

██ Moreover, even assuming *arguendo* that Neverson had prevailed in showing deficient performance, he would also have had to prove that there was a "strong possibility that [counsel's error] affected the outcome of the trial"; that is, "whether the trial might have ended differently absent the lawyer's blunder." *Ouber*, 293 F.3d at 33. This Court rules that the Appeals Court's determination that Neverson failed to prove prejudice was not objectively unreasonable. Aside from the trial court's opinion that the testimony in question was "obvious rubbish", Neverson has produced nothing—beyond his own conclusions—to show that additional expert "testimony" would have been allowed, never mind proof that it would have been persuasive. As such, this Court rules that neither the Appeals Court's determination with respect to the "performance" prong, nor its determination with respect to the "prejudice" prong, was objectively unreasonable so as to warrant habeas relief.

#### b. Failure to Move to Strike Certain Testimony

██ The Appeals Court's determination with respect to counsel's alleged fail-

---

**10.** There are, of course, some exceptions to this general proposition. For example, a defendant makes the decision whether to testify.

*See, e.g.,* Mass. R. Prof. Cond. 1.2(a); *see also Owens v. United States,* 236 F.Supp.2d 122, 142 (D.Mass.2002).

ure to object to certain testimony by the medical examiner was also manifestly reasonable. On cross-examination, Mednick responded vaguely to a challenge that his testimony was based on a probability. Neverson argues that his counsel's decision not to move to strike Mednick's testimony in those circumstances was ineffective assistance. In Neverson's original appeal from his conviction, the Appeals Court noted that Mednick "emphatically rejected the thought that a fifty-one percent likelihood might qualify [as the basis for his opinion], so it is likely that counsel simply elected not to pursue the point further." 35 Mass.App.Ct. at 914, 619 N.E.2d 344. Adopting the Commonwealth's argument, the Appeals Court reiterated this finding and ruled that counsel likely chose not to pursue the point further for strategic reasons. Resp't Supplemental Answer, Ex. 3 at 30.

Neverson mischaracterizes both counsel's actions and the testimony in question. Counsel did press Mednick on cross-examination after he testified that his opinion was based on a "reasonable medical certainty." Mednick did not affirm, however, that this language meant "simply more probable than not." 35 Mass.App.Ct. at 914, 619 N.E.2d 344. Although the Appeals Court opined that the question might have been explored more fully had counsel moved to strike the testimony, *see id.*, there is no evidence that a motion to strike the testimony would have been the preferred strategic choice. Counsel may well have decided, for example, that cross-examination was the proper vehicle through which to attack the credibility of Mednick's testimony and that a motion to strike would draw undue attention to the testimony by the jury. As discussed above, basic strategic decisions at trial are left to counsel and no evidence or case law has been presented to suggest that a decision not to strike testimony constitutes deficient performance of counsel. Moreover, even if Neverson could show that counsel's performance was deficient, there is not a whit of suggestion that such a decision would have altered the trial outcome. For these reasons, therefore, this Court rules that the state court's analysis was not objectively unreasonable and, accordingly, Neverson's claim fails.

## C. Ineffective Assistance of Appellate Counsel

Neverson's brief fails to discuss the substance of his ineffective assistance of appellate counsel claim. Ostensibly, Neverson's claim of ineffective assistance of appellate counsel is the failure to present the ineffective assistance of trial counsel claims on appeal. Pet'r Mem. in Supp. at 8 ("The appellate issues are the failure to present these issues."). This passing reference to the appellate counsel claim is the extent of Neverson's discussion in his memorandum. The claim, however vaguely construed, appears to be exhausted, given the Appeals Court's reference thereto in its opinion. 45 Mass.App.Ct. 1104, 699 N.E.2d 28 (discussing the "failure of the defendant to show that his trial or *appellate* counsel was ineffective . . . .") (emphasis added). Therefore, the claim is properly before the Court.[11]

The Appeals Court's determination that Neverson did not receive ineffective assistance of appellate counsel was not objectively unreasonable. To establish the deficient performance prong of an ineffective assistance of appellate counsel claim, a

---

**11.** Even assuming the claim is not exhausted, this Court retains the authority to deny the claim. A petition "may be denied on the merits, notwithstanding the failure of the ap-

plicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (2000).

petitioner must show that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Given the Court's analysis above, the decision of Neverson's appellate counsel not to pursue the spurious ineffective assistance of trial counsel claims was patently reasonable. There can be no suggestion that these issues were stronger than the sufficiency of the evidence and evidentiary claims appellate counsel did present. Moreover, Neverson has produced nothing to indicate that any deficient performance by appellate counsel would have altered the appeal to satisfy the prejudice prong of *Strickland*. For these reasons, the Appeals Court was not objectively unreasonable and Neverson's claim fails.

### D. Sufficiency of the Evidence

■ As stated above, habeas relief is available only if the state court's decision was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1) (2000). With respect to sufficiency of the evidence claims, the Supreme Court has held that this Court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ The Appeals Court's ruling was neither contrary to, nor an unreasonable application of, this standard. First, the Appeals Court analyzed whether "the evidence at the first trial was insufficient to support a finding of guilt beyond a reasonable doubt." 35 Mass.App.Ct. at 914, 619 N.E.2d 344. This inquiry, which was conducted pursuant to Neverson's direct appeal from his conviction, was entirely con-

sonant with the strictures of *Jackson*. The fact that the Appeals Court did not include a specific citation to the Supreme Court's holding in *Jackson* is irrelevant. *See Early v. Packer*, —— U.S. ——, ——, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (noting that no such citations are required; moreover, a state court is not even required to possess "awareness of [the relevant Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them"). Indeed, Neverson does not appear to contest the standard employed by the Appeals Court.

Second, the Appeals Court's decision was not an objectively unreasonable application of clearly established federal law. As a preliminary matter, the factual findings of the state courts are presumed correct. A habeas petitioner can only overcome a state court's finding of facts by demonstrating that they were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (2000). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner must rebut the presumption by "clear and convincing evidence." § 2254(e)(1). In addition, the presumption of correctness applies to factual determinations made by both state trial and appellate courts. *Sumner v. Mata*, 449 U.S. 539, 546–547, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). In this way, Neverson "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir.2001).

Neverson misunderstands his burden. Although he argues that the factual findings represent mixed findings of law and fact, *see* Pet'r Mem. in Supp. at 24–25, the facts as they relate to an insufficiency-of-

the-evidence claim are typical, historical and narrative facts that carry a presumption of correctness. Neverson has failed to show why this Court should adopt a version of the facts other than that found at trial and memorialized in the appellate decision respecting his direct appeal.

Indeed, the Appeals Court's ruling on sufficiency of the evidence was entirely reasonable. The First Circuit has held that, "the federal habeas court must itself look to 'the totality of the evidence' in evaluating the state court's decision." *Hurtado v. Tucker,* 245 F.3d 7, 18 (1st Cir.2001). Moreover, while "the failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable" under § 2254(d)(1), "the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable." *Id.* The ultimate issue to be resolved "is not how well reasoned the state court decision is, but whether the outcome is reasonable." *Id.* at 20.

Neverson's argument is simply without merit. Notwithstanding the "relatively slight variations" between the experts, the appeals court stated that the "pivotal factor" in a finding of guilty was the "condition (swelling, etc.) of various lacerations and abrasions [on the victim] that were inflicted by ... blunt force blows inconsistent with household accident." 35 Mass. App.Ct. at 914, 619 N.E.2d 344. Because "both [experts] placed the time that the injuries were inflicted before ... the baby's mother returned home," and Neverson had sole custody of the victim during that time, *see id.,* a guilty verdict on these facts was entirely reasonable. Neverson's substantive argument consists only of a specious attack on the admissibility of the medical examiner and a brief speculative assault on the possible inferences one might draw from the testimony of the ex-

perts. Habeas relief is not warranted, however, simply because the evidence may support " 'other hypotheses more congenial to a finding of innocence'." *Hurtado,* 245 F.3d at 19, *quoting United States v. Olbres,* 61 F.3d 967, 970 (1st Cir.1995). Neverson has simply not carried his burden with respect to the alleged insufficiency of the evidence. As the First Circuit has warned, federal courts should be particularly "cautious about issuing habeas, on grounds of the objective unreasonableness of a state court's conclusion that the evidence is sufficient" in cases such as this. *Hurtado,* 245 F.3d at 19–20. This Court will heed the First Circuit's sound caution and deny Neverson's claim.

**E. Purported Right to an Evidentiary Hearing on the Motion for a New Trial**

The state courts' denial of an evidentiary hearing does not warrant granting the Great Writ. Errors of state law do not provide a basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). A federal court may issue a writ of habeas corpus only when a conviction violates the Constitution, laws, or treaties of the United States. *Id.* In this case, Neverson contests the state court's denial of an evidentiary hearing in connection with his motion for a new trial. Under Massachusetts law, it is within the discretion of a Superior Court judge to decide a motion for a new trial without conducting an evidentiary hearing. *Commonwealth v. DeVincent,* 421 Mass. 64, 67–68, 653 N.E.2d 586 (1995); *Commonwealth v. Stewart,* 383 Mass. 253, 257, 418 N.E.2d 1219 (1981). On a motion for a new trial, "[t]he judge may rule on the issue or issues presented by such motion on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motions or affidavits." Mass. R.Crim.

P. 30(c)(3). In this case, the Superior Court judge and the Appeals Court made decisions based upon the Massachusetts Rules of Criminal Procedure. Because this is a decision based upon state law, this Court may not grant a writ of habeas corpus on these grounds.

 Furthermore, the failure to provide an evidentiary hearing does not violate due process. The First Circuit has held that "a federal habeas court will not disturb the state courts' construction or application of state law unless it can be shown that such construction or application offends the Constitution or some (applicable) federal statute." *Hamm v. Latessa,* 72 F.3d 947, 954 (1st Cir.1995). A state's authority to regulate criminal procedures does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The instant case does not present such an offense to justice. First, as Neverson concedes, there is no Constitutional right to collateral review. *See, e.g., Herrera v. Collins,* 506 U.S. 390, 407–408, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Second, Neverson was afforded due process because he was permitted to present the substance of his claims to the state court. State court procedures allow for evidentiary hearings if a judge so authorizes, but that choice lies squarely within the judge's sound discretion. In this case, Neverson simply failed to meet the state procedural requirements that would trigger the need for an evidentiary proceeding—nothing fundamentally unfair inheres in the denial of his motion without a hearing. As the First Circuit has warned, habeas courts should be wary of ruling "by federal fiat that the Due Process Clause broadly nullifies the Commonwealth's power to construe and apply its laws correctly." *Hamm,* 72 F.3d at 955. Marking that warning, this Court rules that no due process violation occurred here.

## III. CONCLUSION

For all the foregoing reasons, habeas relief is unwarranted in this case. Accordingly, Neverson's habeas petition [Docket No. 1] is DENIED. Furthermore, because the petition is denied on the merits, Respondent's Motion to Dismiss the Petition [Docket No. 54] is moot and, therefore, DENIED.

SO ORDERED.