# United States Court of Appeals
## For the First Circuit

No. 03-1385

TREVOR NEVERSON,

Petitioner, Appellant,

v.

STEPHEN FARQUHARSON; FREDERICK B. MACDONALD; LYNN BISSONNETTE,

Respondents, Appellees,

WILLIAM CUDWORTH, Warden of the Adult Correctional Institution,
Cranston, Rhode Island; IMMIGRATION AND NATURALIZATION SERVICE,

Respondents.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, Chief U.S. District Judge]

---

Before
Lynch, Lipez, and Howard, Circuit Judges.

---

John M. Thompson, with whom Thompson & Thompson, P.C. was on
brief, for petitioner.

Natalie S. Monroe, with whom Thomas F. Reilly, Attorney
General, was on brief, for respondent Bissonnette.

Brenda M. O'Malley, Trial Attorney, Office of Immigration
Litigation, with whom Peter D. Keisler, Assistant Attorney General,
Civil Division, and Linda S. Wernery, Senior Litigation Counsel,
were on brief, for respondents Farquharson, MacDonald, Cudworth,
and INS.

---

May 4, 2004

---

**LYNCH**, **Circuit Judge**. Petitioner Trevor Neverson, a native and citizen of Trinidad, was convicted of involuntary manslaughter by a Massachusetts jury in 1990. After a delay of several years, Neverson sought federal habeas corpus relief. The district court held that Neverson's habeas petition was timely under the doctrine of equitable tolling but denied the petition on the merits.

We affirm on a different ground. This case presents a question that this court has several times noted but declined to resolve: whether 28 U.S.C. § 2244(d)(1), which imposes a one-year limitations period on habeas corpus petitions by state prisoners, is subject to the defense of equitable tolling.[1] The district judge, directed to consider that question by a previous panel of this court, see Neverson v. Bissonnette, 261 F.3d 120, 127 (1st Cir. 2001), held that the § 2244(d)(1) limitations period is subject to equitable tolling and that Neverson qualifies for protection under that doctrine. We hold that equitable tolling may apply under § 2244(d)(1) in appropriate cases, but conclude that the district court was not justified in tolling the § 2244(d)(1) limitations period on the facts of this case.

---

[1] See, e.g., David v. Hall, 318 F.3d 343, 346 (1st Cir. 2003); Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002); Donovan v. Maine, 276 F.3d 87, 92-93 (1st Cir. 2002); Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001); see also Brackett v. United States, 270 F.3d 60, 71 (1st Cir. 2001) (same, petitions by federal prisoners under 28 U.S.C. § 2255).

## I.

We begin by noting what is at stake in this appeal. Though framed as an attack on his state conviction under 28 U.S.C. § 2254, Neverson's habeas petition is at bottom an effort to prevent his removal to Trinidad. While Neverson was in prison for his 1990 Massachusetts manslaughter conviction, the INS[2] instigated removal proceedings against him and, in 1997, ordered him deported -- a decision based in part on the fact of Neverson's manslaughter conviction. Cf. 8 U.S.C. § 1227(a)(2)(A)(iii) (commission of an aggravated felony by an alien is a ground for removal). Neverson finished serving his Massachusetts prison sentence in March 2000. Upon his release, he was immediately taken into INS custody, where he remains today. Neverson now seeks relief from his manslaughter conviction in order to attack his removal order -- if the writ issues, he will petition the INS to reopen his deportation proceeding and reconsider his eligibility for certain kinds of relief from removal (e.g., asylum). To this end, Neverson amended his § 2254 petition in the district court to add claims against the INS and certain INS officials under 28 U.S.C. § 2241 (together, the INS respondents).

---

[2] In March 2003, the relevant functions of the INS were transferred into the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement (BICE). For simplicity, we refer to the agency throughout this opinion as the INS.

We recount the facts underlying Neverson's conviction, together with the tangled history of state, immigration, and federal habeas proceedings that followed. Because the timeliness of Neverson's petition is at issue, the various dates are important. Details that do not bear on our decision are omitted.[3]

## A. Neverson's State Conviction

In 1987, a Massachusetts grand jury indicted Neverson for the murder of Leshawna Wright, his infant stepdaughter. His first trial, held in 1989, resulted in a deadlocked jury and a court-ordered judgment of acquittal to the extent that the indictment charged first-degree murder. In 1990, the Commonwealth tried again. At the trial, the prosecution presented expert testimony that "blunt force trauma" was the cause of the baby's death. The child's injuries included fractured ribs, abrasions and contusions, and severe damage to internal organs. Two medical experts testified for the prosecution that these injuries were likely inflicted by blunt, forceful blows, and that they were inconsistent with a household accident. Further, despite minor discrepancies in their testimony, both experts concluded that Leshawna's death

---

[3] More extended discussions of the facts appear in the various published opinions addressing Neverson's claims, including the state appellate court decision upholding Neverson's conviction, Commonwealth v. Neverson, 619 N.E.2d 344, 345 (Mass. App. Ct. 1993); this court's 2001 opinion remanding for consideration of equitable tolling, Neverson v. Bissonnette, 261 F.3d 120, 122-24 (1st Cir. 2001); and the district court's opinion denying Neverson's habeas petition on the merits, Neverson v. Bissonnette, 242 F. Supp. 2d 78, 82-83 (D. Mass. 2003).

occurred at a time when Neverson was home alone with the baby and her stepbrother.

The defense's theory was that Leshawna had fallen from the top of the bunk bed in the bedroom shared by the two children. Neverson proposed to offer the testimony of Dr. James Masi, a professor of physics and biomechanics. Dr. Masi was prepared to testify that a child of Leshawna's size who fell from a height of sixty-three inches, the distance between the top bunk and the floor, would strike the floor with sufficient force that she would probably not survive. Dr. Masi acknowledged on voir dire, however, that his expertise was in physics, not in the medical consequences of falls. For that reason, the trial judge barred Dr. Masi from testifying to the likely medical consequences to Leshawna of a fall from the bunk bed, though the judge was prepared to allow testimony concerning the velocity and force with which the child would strike the floor. Neverson elected not to have Dr. Masi testify; instead, he took the stand and testified that he did not injure the child.

On July 24, 1990, the jury found Neverson guilty of involuntary manslaughter but acquitted him of second-degree murder. He was sentenced to serve sixteen to nineteen years in prison. Neverson brought a timely appeal in the Massachusetts Appeals Court, where he argued that the evidence was insufficient to support the verdict and that the trial court erred in refusing to allow Dr. Masi to testify. The court rejected both arguments,

highlighting the evidence offered by the prosecution's experts and upholding the exclusion of Dr. Masi's proposed testimony in part because it contained "obvious rubbish." Commonwealth v. Neverson, 619 N.E.2d 344, 345-46 (Mass. App. Ct. 1993). The Massachusetts Supreme Judicial Court denied further appellate review on October 25, 1993. Commonwealth v. Neverson, 622 N.E.2d 1364 (Mass. 1993) (table). Neverson's conviction became final when the ninety-day period for seeking certiorari expired on January 23, 1994. See Clay v. United States, 537 U.S. 522, 527 (2003) (discussing finality for purposes of post-conviction relief).

## B. Neverson's First Habeas Petition and State Post-Trial Proceedings

On August 28, 1996, almost three years after the SJC rejected his direct appeal, Neverson (acting pro se) filed his first petition for habeas corpus under 28 U.S.C. § 2254. On respondents' motion, the district court (Judge O'Toole) dismissed the petition without prejudice because it included unexhausted claims. See Rose v. Lundy, 455 U.S. 509, 522 (1982) (federal courts must dismiss "mixed" habeas petitions, i.e., those containing both exhausted and unexhausted claims).[4]

Neverson then returned to state court to exhaust his state post-conviction remedies. His pro se motion for a new trial, filed on July 9, 1997, was denied by the trial judge. The

---

[4] Neverson initially appealed the dismissal of his petition to this court, but he later changed his mind and withdrew the appeal.

-6-

Massachusetts Appeals Court turned down Neverson's appeal of that order, Commonwealth v. Neverson, 699 N.E.2d 28 (Mass. App. Ct. 1998) (table), and the SJC again denied further review, Commonwealth v. Neverson, 700 N.E.2d 544 (Mass. 1998) (table).

## C. Deportation Proceedings

At the same time, Neverson -- who had illegally entered the United States in 1985 -- was also fighting deportation. In 1994, shortly after he began serving his Massachusetts prison term, the INS began removal proceedings against Neverson for entering the United States without inspection. Later, the agency asserted a second ground for removal: that he had been convicted of an aggravated felony (i.e., the manslaughter conviction). See 8 U.S.C. § 1227(a)(2)(A)(iii). On October 24, 1997, an immigration judge found Neverson deportable on both counts, held him ineligible for voluntary departure due to his manslaughter conviction, and ordered his removal to Trinidad. The Board of Immigration Appeals affirmed on December 3, 1998. Neverson did not seek judicial review of that decision.

## D. The Instant Habeas Petition

### 1. Dismissal under 28 U.S.C. § 2244(d)(1)

Meanwhile, on August 17, 1998, Neverson filed a new pro se petition for habeas corpus that contained only exhausted claims. The district court (Judge Lindsay) dismissed Neverson's petition as time-barred under the Antiterrorism and Effective Death Penalty

-7-

Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA).  See

Neverson v. Bissonnette, No. CIVA9811719RCL, 1999 WL 33301665, at

*3 (D. Mass. Dec. 10, 1999).  AEDPA imposed a one-year statute of

limitations for § 2254 claims.  Codified at 28 U.S.C. § 2244(d)(1),

that limitations period expired for Neverson's purposes on April

24, 1997, one year after the date of AEDPA's enactment.  Neverson,

1999 WL 33301665, at *2; see Gaskins v. Duval, 183 F.3d 8, 9 (1st

Cir. 1999) (allowing a one-year grace period beginning on the date

of AEDPA's enactment for prisoners whose convictions became final

prior to AEDPA).

In his arguments to the district court, Neverson

acknowledged AEDPA but argued that the § 2244(d)(1) period was

tolled while his first habeas petition was pending.  Neverson

relied in part on 28 U.S.C. § 2244(d)(2), which tolls the one-year

limitations period during the pendency of "a properly filed

application for State post-conviction or other collateral review."

He contended that the reference to "other collateral review" in

§ 2244(d)(2) meant that the limitations period was tolled during

any prior federal habeas proceedings.  If so, his second habeas

petition was timely.[5]

_____

[5] Neverson's first habeas petition was within the limitations
period, having been filed on August 28, 1996, or 126 days after the
period began to run.  That first petition remained pending in
federal court for 118 days.  Neverson's second, fully exhausted
habeas petition was filed on August 17, 1998, or 464 days after the
AEDPA period began to run.  So if the limitations period was tolled
while Neverson's first habeas petition was pending in federal

Judge Lindsay disagreed, holding that § 2244(d)(2) applied only to state collateral proceedings and that, as a result, the AEDPA limitations period had expired in April 1997, before Neverson filed his state petition for post-conviction relief. See 1999 WL 33301665, at *3. Judge Lindsay also rejected Neverson's argument that his second petition "relate[d] back" to his first under Fed. R. Civ. P. 15(c). Id. But while he denied Neverson's petition, Judge Lindsay granted a certificate of appealability on both the tolling and relation-back issues. See id. Neverson then perfected his appeal.

### 2. First Appeal and Remand

A panel of this court appointed counsel for Neverson and heard argument on November 9, 2000. Shortly thereafter, the Supreme Court granted certiorari in Duncan v. Walker, 531 U.S. 991 (2000) (mem.). Duncan presented one of the two questions raised by Neverson's appeal: whether 28 U.S.C. § 2244(d)(2) meant that AEDPA's one-year limitations period was tolled during prior federal habeas corpus proceedings. Accordingly, we stayed Neverson's appeal until June 2001, when the Supreme Court answered that question in the negative. See Duncan v. Walker, 533 U.S. 167, 180-81 (2001). Then, consistent with Duncan, this court upheld the district court's rejection of Neverson's statutory tolling and relation-back arguments. See Neverson, 261 F.3d at 125-26.

---

court, he used only 346 days out of his allotted 365.

-9-

Nevertheless, we recognized that the separate doctrine of equitable tolling, if available at all under § 2244(d)(1), might salvage Neverson's claims. Id. at 126-27; see also Duncan, 533 U.S. at 183 (Stevens, J., concurring) (observing that nothing in Duncan or in AEDPA "precludes a federal court from deeming the limitations period tolled for [a federal habeas] petition as a matter of equity"). Concluding that Neverson had raised an equitable tolling argument before the district court but that the court had not addressed it, we remanded the case with instructions to consider whether equitable tolling is available under § 2244(d)(1) and, if so, whether it would save Neverson's petition. 261 F.3d at 127.

3. Remand:  Acceptance of Equitable Tolling and Denial on the Merits

On remand, the district court (Chief Judge Young) held that equitable tolling should apply under § 2244(d)(1) and tolled the limitations period for the 118 days that Neverson's first habeas petition was pending before Judge O'Toole. The court also, in an earlier order, allowed Neverson to amend his habeas petition to include claims under 28 U.S.C. § 2241 challenging his deportation. Then on February 4, 2003, after taking briefs and hearing argument, the district court denied Neverson's habeas

petition on the merits.  See <u>Neverson</u> v. <u>Bissonnette</u>, 242 F. Supp. 2d 78, 95 (D. Mass. 2003).[6]

The district court granted a certificate of appealability "as to the propriety of equitable tolling and as to each of the substantive grounds on which the court rejected the petitioner's habeas claim."  Neverson brought the instant appeal.

## E.  Provisional Stay of Removal

During the pendency of this appeal, Neverson's immigration proceedings have been on hold.  In March 2000, while his first appeal was pending before this court, Neverson completed his sentence for his Massachusetts manslaughter conviction.  The INS immediately took Neverson into custody and prepared to deport him, acquiring the necessary travel documents and purchasing a one-way ticket to Trinidad on American Airlines.

On Neverson's emergency motion, this court issued a provisional stay on September 8, 2000 barring the INS from deporting Neverson until we could hear and decide his case.  When Neverson's case was remanded to the district court, we specified that the provisional stay was to remain in effect until "further order of either the district court or, if another appeal ensues, this court."  261 F.3d at 127.

---

[6] The district court did not address the merits of Neverson's § 2241 claims against the INS respondents.  When Neverson pointed this out in a Rule 60(a) motion to reopen, the court denied the motion and stated that its February 4, 2003 opinion had "addressed al[l] the matters before it."

Nevertheless, on June 25, 2003, after the district court had denied Neverson's petition on the merits, the INS announced its intention to deport Neverson to Trinidad -- even though Neverson had already noticed an appeal to this court and the district court had already granted a certificate of appealability. Neverson sought emergency relief from the district court, which issued an order stating that it lacked jurisdiction to award relief but clarifying that its February 4, 2003 opinion had not modified the September 8, 2000 provisional stay. On July 2, 2003, this court entered an order confirming that the INS was not permitted to deport Neverson until further notice: "We agree with petitioner that the provisional stay of deportation entered on September 8, 2000 remains in effect and that, so long as that is the case, any attempt to execute his removal is barred."

## II.

### A. Appellate Jurisdiction

Before turning to the merits, we must address Neverson's contention that this court lacks jurisdiction to consider the Commonwealth's challenge to the district court's use of equitable tolling under AEDPA. That issue is not properly before this court, Neverson says, because the district court decided it in his favor and the Commonwealth failed to file a cross-appeal.

We disagree. Neverson is correct that absent a cross-appeal, a party "may not use his opponent's appeal as a vehicle for

-12-

attacking a final judgment in an effort to diminish the appealing party's rights thereunder."  Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998); see El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479 (1999); United States v. Craven, 239 F.3d 91, 97 (1st Cir. 2001).  But respondents here do not seek to alter the judgment of the district court.  On the contrary, the district court granted all of the relief that respondents requested -- i.e., dismissal of Neverson's petition with prejudice.[7]  Under these circumstances, a cross-appeal would have been improper.  See Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d 1, 5 n.4 (1st Cir. 2004) ("A party may not appeal from a favorable judgment.").

Here, respondents merely seek to defend the dismissal of Neverson's petition on an alternate legal ground that is manifest in the record.  This they are entitled to do, even if it means attacking the reasoning of the district court, see Neztsosie, 526 U.S. at 479, and even if they lost on the same argument below, see Connell v. Trs. of the Pension Fund of the Ironworkers Dist. Council, 118 F.3d 154, 156 n.5 (3d Cir. 1997) (applying this principle in the statute of limitations context); Engleson v.

---

[7] By comparison, if the district court had dismissed Neverson's petition without prejudice, a cross-appeal would have been necessary to convert the judgment to dismissal with prejudice on statute of limitations grounds.  See Tredway v. Farley, 35 F.3d 288, 296 (7th Cir. 1994) (in habeas case, dismissal without prejudice could not be converted to dismissal with prejudice absent timely cross-appeal).

Burlington N. R.R. Co., 972 F.2d 1038, 1041 (9th Cir. 1992) (same). There is no defect in our appellate jurisdiction.

## B.  Equitable Tolling Under 28 U.S.C. § 2244(d)(1)

### 1.  Availability of Equitable Tolling

The next question is the same one that this court originally directed the district court to consider: "Is equitable tolling available to extend the one-year limitation period specified in section 2244(d)(1)?" Neverson, 261 F.3d at 127.  This court has several times noted this question but declined to answer it.  See supra note 1.  In this case, because we earlier remanded on this precise issue, because the district court held that equitable tolling is available, and because respondents challenge that conclusion, we will address it.  Our review is de novo. Almanzar v. Maloney, 281 F.3d 300, 303 (1st Cir. 2002) (a district court's legal conclusions in a habeas proceeding are reviewed de novo).

The doctrine of equitable tolling provides that in exceptional circumstances, a statute of limitations "may be extended for equitable reasons not acknowledged in the statute creating the limitations period."  David v. Hall, 318 F.3d 343, 345-46 (1st Cir. 2003); see Delaney v. Matesanz, 264 F.3d 7, 13-14 (1st Cir. 2001).  Statutory filing deadlines are presumptively subject to equitable tolling.  See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990) (referring to the "rebuttable

-14-

presumption of equitable tolling"); United States v. Locke, 471 U.S. 84, 94 n.10 (1985); see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (filing a timely charge of discrimination with the EEOC is "a requirement that, like a statute of limitations, is subject to . . . equitable tolling").

The presumption that equitable tolling is available is rebutted principally in two situations. First, deadlines that define the court's jurisdiction may not be equitably tolled. See Soriano v. United States, 352 U.S. 270, 276 (1957); David, 318 F.3d at 345.[8] Second, equitable tolling will not apply where there are other indications that Congress intended to preclude it. See United States v. Beggerly, 524 U.S. 38, 48 (1998); United States v. Brockamp, 519 U.S. 347, 350-51 (1997); Jordan Hosp., Inc. v. Shalala, 276 F.3d 72, 79-80 (1st Cir. 2002).

---

[8] This court suggested over ten years ago that the focus in Soriano and its progeny on whether the limitations period at issue is "jurisdictional" might be inconsistent with the "rebuttable presumption of equitable tolling" in Irwin. See Oropallo v. United States, 994 F.2d 25, 29 n.4 (1st Cir. 1993). But there is no necessary inconsistency between Soriano and Irwin (i.e., it may be that when a time limit is phrased in jurisdictional terms, the Irwin presumption is rebutted), and the Supreme Court after Irwin has continued to characterize "jurisdictional" time limits as ineligible for equitable tolling. See, e.g., Stone v. INS, 514 U.S. 386, 405 (1995). So, too, has this court. E.g., David, 318 F.3d at 345. In any event, the question underlying these doctrinal pigeonholes is whether equitable tolling would be "inconsistent with the text of the relevant statute," United States v. Beggerly, 524 U.S. 38, 48 (1998), and the extent to which a statutory deadline is phrased in jurisdictional terms is relevant to that determination.

-15-

There is no indication in the text of § 2244(d)(1) that the one-year deadline is jurisdictional or that Congress meant to preclude equitable tolling. The statute expressly describes the one-year term as a "period of limitation." It does not "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." Zipes, 455 U.S. at 394; see David, 318 F.3d at 346. Nor does 28 U.S.C. § 2241, the provision permitting district courts to grant writs of habeas corpus, limit that power to cases in which the petition has been timely filed. See Zipes, 455 U.S. at 393. AEDPA's legislative history likewise makes clear that Congress intended to create a statute of limitations for habeas claims, not a jurisdictional bar. See Calderon v. U.S. Dist. Ct. for the Cent. Dist. of Cal., 128 F.3d 1283, 1288-89 (9th Cir. 1997) (summarizing the relevant legislative history), overruled on other grounds, 163 F.3d 530, 539 (9th Cir. 1998) (en banc).

Respondent Bissonnette argues that by setting out a variety of specific circumstances that will delay the running of the statute, see § 2244(d)(1)(B)-(D), and by providing that the one-year period is tolled during the pendency of state collateral review, see § 2244(d)(2), Congress implicitly precluded tolling based on other equitable considerations. Cf. Brockamp, 519 U.S. at 351-52 (holding that equitable tolling is not available under a tax statute because, inter alia, the statute "sets forth explicit exceptions to its basic time limits, and those very specific

-16-

exceptions do not include 'equitable tolling'"). This is a forceful objection, as this court has elsewhere acknowledged. See David, 318 F.3d at 346 (noting the specific exceptions listed in § 2244(d)(1) and observing that "Congress likely did not conceive that the courts would add new exceptions").

Nevertheless, we agree with the Fourth Circuit that respondents' argument "reads too much into any negative inference that may reasonably be drawn from the exceptions." Harris v. Hutchinson, 209 F.3d 325, 329 (4th Cir. 2000). Congress's inclusion of a few specific exceptions in § 2244(d)(1) does not require the inference that the limitations period is, for all other purposes, effectively a jurisdictional bar. Given that Congress enacted § 2244(d)(1) against the background of the Irwin presumption and elected to describe the one-year term as a "period of limitation," the better conclusion is that Congress intended to retain the flexibility afforded by the doctrine of equitable tolling. See Young v. United States, 535 U.S. 43, 49-50 (2002) (Congress must be presumed to draft limitations periods in light of the "hornbook law that limitations periods are subject to equitable tolling" (internal quotation marks omitted)).[9]

---

[9] We also note that at least four Justices in Duncan v. Walker, 533 U.S. 167 (2001), expressed the view that equitable tolling is available under § 2244(d)(1). See id. at 183 (Stevens, J., joined by Souter, J., concurring) ("[N]either the Court's narrow holding, nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled . . . as a matter of equity."); id. at 192 (Breyer,

-17-

We hold that the one-year limitations period in § 2244(d)(1) is not jurisdictional and, accordingly, can be subject to equitable tolling in appropriate cases. Every other circuit to address this question has reached the same conclusion. <u>See</u> <u>McClendon</u> v. <u>Sherman</u>, 329 F.3d 490, 492 (6th Cir. 2003); <u>Helton</u> v. <u>Dep't of Corr.</u>, 259 F.3d 1310, 1312 (11th Cir. 2001); <u>Smith</u> v. <u>McGinnis</u>, 208 F.3d 13, 17 (2d Cir. 2000); <u>Harris</u>, 209 F.3d at 329-30; <u>Kreutzer</u> v. <u>Bowersox</u>, 231 F.3d 460, 463 (8th Cir. 2000); <u>Taliani</u> v. <u>Chrans</u>, 189 F.3d 597, 598 (7th Cir. 1999) (but noting that little practical room may exist under § 2244(d)(1) for invoking the doctrine); <u>Miller</u> v. <u>N.J. State Dep't of Corr.</u>, 145 F.3d 616, 617-18 (3d Cir. 1998); <u>Davis</u> v. <u>Johnson</u>, 158 F.3d 806, 810-12 (5th Cir. 1998); <u>Miller</u> v. <u>Marr</u>, 141 F.3d 976, 978 (10th Cir. 1998); <u>Calderon</u>, 128 F.3d at 1288-89.[10]

### 2. <u>Neverson's Petition</u>

That equitable tolling is available in theory under § 2244(d)(1), however, does not mean the district court was correct to toll the limitations period in Neverson's case. As the party seeking to invoke equitable tolling, Neverson bears the burden of

---

J., joined by Ginsburg, J., dissenting) (describing the suggestion that courts employ equitable tolling under § 2244(d)(1) as "sound"). The majority did not deny that equitable tolling could apply; it merely stated that it had no occasion to address the issue. <u>See</u> 533 U.S. at 181.

[10] Only the D.C. Circuit has not yet decided the question. <u>See</u> <u>United States</u> v. <u>Cicero</u>, 214 F.3d 199, 202-03 (D.C. Cir. 2000) (noting but reserving the issue in the § 2255 context).

establishing the basis for it.  Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002).  We review the district court's decision to invoke equitable tolling for abuse of discretion.[11]  Delaney, 264 F.3d at 13.

To preserve the usefulness of statutes of limitations as rules of law, equitable tolling should be invoked only "sparingly." Irwin, 498 U.S. at 95.  It is not available to rescue a litigant from his own lack of due diligence.  See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984).  "Equitable tolling . . . is the exception rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances."  Donovan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002) (quoting Delaney, 264 F.3d at 14); see also Brackett v. United States, 270 F.3d 60, 67 (1st Cir. 2001) (describing equitable tolling of § 2254 claims as a "narrow safety valve[]" reserved for "instances of clear injustice").  This means that, at a minimum, equitable tolling is appropriate only when circumstances beyond the petitioner's control have prevented him from filing on time.  Lattimore, 311 F.3d at 55; Delaney, 264 F.3d at 15.  In the habeas context particularly, care is required to avoid upsetting the "strong concern for finality" embodied in § 2254.  Brackett, 270 F.3d at 67.

---

[11] We note that the courts of appeals disagree over the standard of review that should govern equitable tolling issues in habeas cases.  See Rouse v. Lee, 339 F.3d 238, 247-48 & n.7 (4th Cir. 2003) (discussing the split).

The district court equitably tolled the § 2244(d)(1) period in Neverson's case because it felt Neverson had been unfairly misled by a sea change in habeas law in the last decade. When Judge O'Toole dismissed Neverson's first habeas petition in 1996, the accepted rule under Rose v. Lundy, supra, was that a district court "must dismiss" any habeas petition like Neverson's that presented both exhausted and unexhausted claims. See 455 U.S. at 522. But in light of § 2244(d)(1) and the Supreme Court's decision in Duncan, it is now apparent that a prisoner whose habeas petition is dismissed under Rose v. Lundy can easily find himself barred from obtaining any federal review of his petition when he tries to return to federal court. See Duncan, 533 U.S. at 186 (Breyer, J., dissenting) (citing a 1995 Department of Justice study indicating that, on average, district courts take 268 days to dismiss habeas petitions on procedural grounds, and that 10% of such petitions remain pending for longer than two years). The district court noted that the First Circuit now recommends that courts stay, not dismiss, mixed habeas petitions whenever "there is a realistic danger that a second petition, filed after exhaustion has occurred, will be untimely." Delaney, 264 F.3d at 14 n.5. If Neverson's mixed petition had been treated that way, the district court concluded, his fully exhausted petition would have been timely.

There is some force to this argument. In an opinion published shortly after the district court equitably tolled Neverson's petition, this court recognized "a growing consensus that a stay is <u>required</u> when dismissal [of a mixed petition] could jeopardize the petitioner's ability to obtain federal review." <u>Nowaczyk</u> v. <u>Warden</u>, 299 F.3d 69, 79 (1st Cir. 2002) (emphasis in original); <u>see also</u> <u>Duncan</u>, 533 U.S. at 182-83 (Stevens, J., concurring) ("[I]n our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies. Indeed, there is every reason to do so . . . when the failure to retain jurisdiction would foreclose federal review of a meritorious claim because of the lapse of AEDPA's 1-year limitations period.").

In fact, several of our sister circuits have approved equitable tolling under § 2244(d)(1) where, as here, the petitioner was never offered the option of a stay or warned of the hazards of returning to state court without such a stay. <u>See</u> <u>Brambles</u> v. <u>Duncan</u>, 330 F.3d 1197, 1203-04 (9th Cir. 2003), <u>amended on other grounds</u>, 342 F.3d 898 (9th Cir. 2003); <u>Hargrove</u> v. <u>Brigano</u>, 300 F.3d 717, 719-21 (6th Cir. 2002); <u>Zarvela</u> v. <u>Artuz</u>, 254 F.3d 374, 382-83 (2d Cir. 2001); <u>see also</u> <u>Wojcik</u> v. <u>Spencer</u>, 198 F. Supp. 2d 1, 2-3 (D. Mass. 2002) (same). But the fate of this line of cases is uncertain: in January 2004, the Supreme Court granted

-21-

certiorari to determine whether the district courts must offer the alternative of a stay when dismissing a mixed habeas petition. See Pliler v. Ford, 124 S. Ct. 981 (2004) (mem.).[12]

To this argument, Neverson adds the fact that Judge O'Toole did not affirmatively advise him of his option under Rose v. Lundy to abandon his unexhausted claims and proceed with his exhausted claims only. Cf. Rose, 455 U.S. at 510; Nowaczyk, 299 F.3d at 75 (stating, albeit without analysis, that "Rose directed district courts to offer [this] choice"). While this circuit has not held that a district court's failure to provide such advice is prejudicial error, it is certainly the wiser practice, and we recommend that courts do so. One circuit has equitably tolled the § 2244(d)(1) period where a habeas petitioner was not so advised. See Tillema v. Long, 253 F.3d 494, 503-04 (9th Cir. 2001).

Nevertheless, we conclude that the district court abused its discretion in resorting to equitable tolling on the facts of this case. That is because neither (1) the district court's

---

[12] The question presented in Pliler is "[w]hether the dismissal of . . . a 'mixed' habeas petition is improper unless the district court informs the petitioner about the possibility of a stay of the proceeding pending exhaustion of state remedies and advises the petitioner with respect to [AEDPA's] statute of limitations in the event of any refiling." Petition for Certiorari at i, Pliler v. Ford, 2003 WL 22428760 (U.S. Aug. 8, 2003) (No. 03-221). Pliler also presents the question whether a second habeas petition may relate back to a first, unexhausted petition under Fed. R. Civ. P. 15(c), where the first habeas proceeding is no longer pending. Id. This court decided that question against Neverson in his first appeal. See Neverson, 261 F.3d at 126.

-22-

decision to dismiss rather than stay Neverson's mixed petition nor (2) its failure to advise Neverson of his options under <u>Rose</u> v. <u>Lundy</u> actually prevented Neverson from filing a timely habeas petition. <u>See</u> <u>Lattimore</u>, 311 F.3d at 55 (equitable tolling "is reserved for cases in which circumstances beyond the litigant's control have prevented him from promptly filing"). Several considerations compel this conclusion.

First, the SJC rejected Neverson's final direct appeal in October 1993, yet he did not bring any collateral challenge (state or federal) to his conviction until August 1996, four months after AEDPA was enacted. Neverson offers no justification for this delay of nearly three years. Most of Neverson's habeas claims do not depend on after-discovered evidence. The only one that arguably does is his contention that his trial counsel could and should have found a medical expert who would be qualified to testify, and that Neverson has since located an expert who was available at the time of his trial. But no persuasive reason is given why Neverson could not have searched earlier or presented this argument earlier.

If Neverson had brought his collateral attack during his three years of unexplained delay, he could easily have exhausted his state remedies and filed a perfected habeas petition in federal court before the § 2244(d)(1) clock ran out.[13] Equitable tolling

---

[13] We note that it took Neverson only a year (from July 9, 1997 to July 27, 1998) to exhaust his state remedies, when at last he pursued them.

-23-

in these circumstances is not warranted.  See Delaney, 264 F.3d at 14 (equitable tolling not justified where, inter alia, petitioner waited until two years after his conviction became final, and ten months after AEDPA was enacted, to file a habeas petition). Indeed, there is an odor of gamesmanship here, and the district court erred in using its equitable discretion to relieve Neverson of the consequences of his delay.  Cf. Brackett, 270 F.3d at 70 (noting the incentives for prisoners to delay collateral challenges until trial records are destroyed and witnesses become unavailable or their memories fade).

Admittedly, Neverson was under no obligation prior to AEDPA to act promptly in seeking habeas relief.  But that is one of the very problems Congress intended AEPDA to address, and permitting equitable tolling on these facts would fly in the face of that clear congressional purpose.  "One of AEDPA's main purposes was to compel habeas petitions to be filed promptly after conviction and direct review . . . .  To bypass these restrictions for reasons other than those given in the statute could be defended, if at all, only for the most exigent reasons."  David, 318 F.3d at 346.  There are no such exigent reasons here.

Even if there were a fair excuse for his pre-filing delay, Neverson also inexplicably waited nearly seven months after Judge O'Toole's dismissal of his initial habeas petition (from December 24, 1996 to July 9, 1997) before he requested a new trial

-24-

in state court. When Judge O'Toole dismissed his initial habeas petition, Neverson still had nearly four months (from December 24, 1996 to April 24, 1997) remaining under AEDPA in which to seek a new trial in state court. By that time, AEDPA was in full force, and Neverson is charged with knowledge of its requirements. Lattimore, 311 F.3d at 55 (pro se habeas petitioner's ignorance of AEDPA's requirements does not excuse an untimely filing). If Neverson had sought a new trial promptly in state court, the § 2244(d)(1) period would have been tolled, see § 2244(d)(2), and his second habeas petition -- which he managed to file only 21 days after he exhausted state remedies -- would have been timely.

We hold that equitable tolling was not warranted on the facts of this case and that Neverson's habeas petition is time-barred under § 2244(d)(1).

## C. Neverson's Habeas Claims

### 1. Section 2254 Claims

Our conclusion that Neverson's petition was untimely marks the end of his attack on his Massachusetts conviction. Nevertheless, because our decision will result in Neverson's permanent removal from the United States,[14] and because the Supreme Court's eventual opinion in Pliler v. Ford, supra, might alter our

---

[14] See 8 U.S.C. § 1326(b)(2) (prohibiting persons previously deported after committing an aggravated felony from re-entering the United States without the express prior consent of the Attorney General).

view of the equitable tolling question, we wish to be clear that there is no merit to Neverson's underlying habeas claims.

First, the district court properly rejected Neverson's Sixth Amendment challenge to the state trial judge's limitation of Dr. Masi's proposed testimony. The Sixth Amendment does not prevent state trial judges from requiring a defendant's compliance with rules of evidence, as long as those rules are not "arbitrary" or "disproportionate to the purposes they are designed to serve." United States v. Scheffer, 523 U.S. 303, 308 (1998). A rule preventing experts from testifying beyond their qualifications is neither. And even if the state court erred in barring Dr. Masi's testimony as a matter of Massachusetts evidence law -- a proposition that the district court felt "strains the bounds of common sense," 242 F. Supp. 2d at 87 -- habeas relief is not available for violations of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Second, Neverson has no Sixth Amendment claim that his trial counsel was ineffective, even if we were to bypass the procedural default issues identified by the district court, see 242 F. Supp. 2d at 87-88, and overlook AEDPA's narrow standard of review for claims adjudicated by the state courts, see 28 U.S.C. § 2254(d)(1). Neverson's principal claim of ineffective assistance boils down to an assertion that his lawyer should have retained a medical expert who could offer the testimony that Dr. Masi was

barred from giving (<u>i.e.</u>, that the baby's death could have been caused by a fall from the top bunk).  The state trial court, however, said that Neverson offered nothing but "unsubstantiated speculation that . . . expert testimony on those issues could have been obtained."  In his habeas petition, Neverson says that a person with the necessary expertise <u>was</u> available to testify.  But he has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense.  <u>See</u> 242 F. Supp. 2d at 91.  Moreover, whether to call a particular expert is normally the sort of strategic decision that is reserved for trial counsel.  Neverson's fallback ineffective assistance theories are likewise unpersuasive.

Finally, Neverson's challenge to the sufficiency of the evidence is meritless.  The claim would fail on de novo review, let alone under AEDPA.  <u>Cf.</u> 28 U.S.C. §§ 2254(d), (e)(1).  As the district court found, Neverson's argument amounted to "a specious attack on the admissibility of the medical examiner['s testimony] and a brief speculative assault on the possible inferences one might draw from the testimony of experts."  242 F. Supp. 2d at 94.  The evidence was more than sufficient for a reasonable jury to conclude that Neverson caused the death of his baby.  <u>See</u> <u>Neverson</u>, 619 N.E.2d at 345-46.  His remaining assignments of error in his state conviction are likewise without merit.

2. <u>Section 2241 Claims</u>

This leaves Neverson's § 2241 claims against the INS respondents. In their brief to this court, the INS respondents argued that the district court never actually permitted Neverson to amend his habeas petition to challenge his final order of deportation. That assertion is flatly contradicted by the record, as counsel for the INS acknowledged at oral argument. Such misrepresentations of the record are poor advocacy and waste both the court's and other litigants' time. We expect better from counsel, including government counsel. <u>Cf.</u> <u>Thomas</u> v. <u>Digital Equip. Corp.</u>, 880 F.2d 1486, 1490-91 (1st Cir. 1989) (sanctioning a party that made material misrepresentations of the record in its appellate brief).

In any event, Neverson's § 2241 claims provide no basis for vacating his deportation order. First, Neverson has withdrawn his argument that the INS's use of his manslaughter conviction as a ground for deportation represents an unauthorized retroactive application of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). <u>See</u> <u>Choeum</u> v. <u>INS</u>, 129 F.3d 29, 37 (1st Cir. 1997) (holding that an IJ or BIA decision that occurs after September 30, 1996 is an "action taken" that triggers IIRIRA's aggravated felony rules). Second, to the extent Neverson's § 2241 petition sought his release on bail pending his removal, our decision today has rendered his argument moot.

-28-

Finally, Neverson argues that the IJ abused her discretion by denying discretionary relief from deportation under § 212(h) of the Immigration and Nationality Act, see 8 U.S.C. § 1182(h), due to extreme hardship to his citizen family members. We doubt that this claim is cognizable in a § 2241 proceeding. See Saint Fort v. Ashcroft, 329 F.3d 191, 203 (1st Cir. 2003) (an alien may use § 2241 to challenge the INS's refusal to consider him for discretionary relief, but not to challenge the agency's refusal to exercise its discretion favorably). Regardless, the argument is without merit. The IJ exhaustively reviewed the evidence relevant to Neverson's request for a waiver under § 212(h) and concluded that Neverson could not make the requisite showing of extreme hardship. There was no error.

## III.

The denial of Neverson's petition for habeas corpus is **affirmed**, and the provisional stay of deportation entered by this court on September 8, 2000 is dissolved. **So ordered**.