**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-2460

HAI NING ZHANG,

Petitioner,

v.

ALBERTO R. GONZÁLES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Torruella and Lipez, Circuit Judges.

Jeffrey C. Bloom, with whom Jeffrey C. Bloom, P.C., on brief for petitioner.
Manuel A. Palau, Trial Attorney, Civil Division, U.S. Department of Justice, Peter D. Keisler, Assistant Attorney General, Civil Division, and Terri J. Scadron, Assistant Director, on brief for respondent.

September 1, 2006

**TORRUELLA**, **Circuit Judge**.  Petitioner Hai Ning Zhang ("Zhang") petitions us to review the Board of Immigration Appeals' ("BIA") denial of a motion to reopen his removal proceedings. After careful consideration, we affirm.

## I.  Background

### A.  Procedural Overview

Zhang, a native and citizen of China, lawfully entered the United States in Los Angeles, California, on March 19, 2001. Zhang had a B-1 visa valid until May 19, 2001, which he overstayed. On April 3, 2002, Zhang filed an I-589 application seeking asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  On January 9, 2003, the Immigration and Naturalization Service ("INS")[1] served Zhang with a Notice to Appear, charging that he was removable under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), as an alien admitted as a nonimmigrant who remained in the United States for a time longer than permitted.  On March 25, 2003, Zhang conceded removability.

Zhang appeared before an Immigration Judge ("IJ") on August 8, 2003.  On August 22, the IJ pretermitted Zhang's asylum application and denied his request for withholding of removal and

---

[1]  In March 2003, the relevant functions of the INS were transferred into the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement. For simplicity, we refer to the agency throughout this opinion as the INS.

relief under CAT. The IJ also granted Zhang voluntary departure. Zhang timely appealed to the BIA, which summarily affirmed the IJ's decision on December 17, 2004. Zhang did not appeal this decision but instead filed a motion to reopen and reconsider and a motion to stay deportation with the BIA, on July 26, 2005. The BIA denied these motions as untimely on September 2, 2005. Zhang has timely appealed.

## B. Factual Background

The following facts are taken from Zhang's testimony before the IJ and from documents he presented in support of his asylum application.

Zhang, married with no children, left China for the United States in March 2001. He is a practitioner of Falun Gong[2] and claims that he suffered harsh treatment by the Chinese government as a result. Before he left China, Zhang had worked as a deputy manager in the sales department of a computer hardware company ("the Company") since 1995 and earned the equivalent of approximately $31,000 annually. The Company was owned jointly by the Chinese government (60%) and by an individual named Huan Chao He ("He"), whom Zhang described as a mentor, father figure, and

---

[2] Zhang described Falun Gong as a faith whose "characteristic is to purify your soul. To foster your ethics, your morals . . . to seek the truth." He did not describe in great detail what this entails, aside from references to practicing in a park and purchasing instructional books and tapes. By the time he left China, he testified, he had become an "intermediate level" practitioner.

best friend.  Zhang testified that he earned 100,000,000 Renminbi ("RMB" -- Chinese currency)[3] for the Company, and that for years before he left China, he and his wife lived in a Company-owned house.

Zhang started practicing Falun Gong in March 1998. Between July 1999 and his departure from China in March 2001, he alleges that he was detained and abused by the Chinese government on three separate occasions.  He was detained for seven days in July 1999, and for thirteen days in September-October 2000.  During these two detentions, Zhang suffered physical abuse, including one beating during the second detention that left him with a broken vertebra.  Prior to the first detention, security officers seized Zhang's Falun Gong materials and several personal items.  During both detentions, either Zhang or his wife received notification of his release date, and the detentions lasted no longer than thirteen days, in accordance with Chinese criminal law at the time.  During these two episodes and another minor detention in October 1999 which lasted approximately five hours, Zhang was ordered to stop practicing Falun Gong.  He refused to sign documents renouncing Falun Gong but did limit his practice of the faith to his home.

Zhang's practice of Falun Gong, as well as the incidents with the security officers, also caused him problems at his job.

---

[3] At all times relevant to this series of events, the value of the Renminbi was fixed at a rate of approximately 8.28 RMB per dollar. Zhang thus claims to have earned over $12,000,000 for the Company.

After each detention, the Company urged him to stop practicing Falun Gong. Finally, in November 2000, shortly after his third detention, Zhang was officially fired from his job, upon orders from a government security office. The Company retained his services unofficially, however, and he continued to work in the sales area at a reduced salary. In preparation for a business trip to the United States, the Company secured the return of Zhang's passport, which had been seized by the security office. The security office, however, would not let Zhang receive any commission from the trip, which Zhang predicted would be worth $180,000.[4] On March 19, 2001, Zhang entered the United States at Los Angeles, California but soon realized that the Company had lost the deal that he had been sent to complete. Zhang informed his boss, who became angry and soon stopped returning Zhang's phone calls. Zhang then contacted his friend He, who informed him that another Falun Gong member had just received a two- to three-year prison sentence and advised him to remain in the United States and petition for asylum.

Zhang traveled to Baltimore, Maryland, on March 26, 2001, where he lived with a friend, and moved to Puerto Rico on June 19. On June 21, 2001, the Company seized Zhang's home and evicted his

---

[4] The fact that the security office knew about the trip at all would imply that it knew that Zhang was still working for the Company. Zhang does not attempt to reconcile this with his testimony that the office had already ordered that he be fired.

wife.  She was also fired from her job upon orders from the security office.  Zhang testified that he still practices Falun Gong and that he fears that, just like many other Falun Gong practitioners, he would be imprisoned if he returned to China.

### C.  IJ's Decision and BIA's Affirmance

On August 8, 2003, Zhang appeared before an IJ in San Juan, Puerto Rico.  The IJ denied all of Zhang's claims.  She first pretermitted Zhang's asylum claim because it was filed one year and sixteen days after his arrival in the United States, in violation of the one-year deadline.[5]

The IJ then denied Zhang's request for withholding of removal, finding that he had wholly failed to prove that he would be persecuted based on his Falun Gong faith if he returned to China.  Taking Zhang's testimony as true, the IJ found that even despite his detentions, all of which conformed with Chinese criminal law, Zhang still enjoyed significant benefits from the government in the sense that he remained employed by a company in which the government was a majority owner.  Therefore, the IJ held that even though some Falun Gong practitioners were persecuted, this did not mean that Zhang himself would be persecuted or tortured upon his return to China.  Instead, the IJ characterized

---

[5]  Zhang testified that he believed that he needed his birth certificate to complete his application and was thus waiting until he received it in order to file.  The IJ held that this was not a valid excuse for his tardiness, because he could have easily filed by using his passport.

Zhang's decision to remain in the United States as a result of a "business transaction turned sour" and noted that the seizure of his home was not related to his practice of Falun Gong, but instead to the fact that he had effectively abandoned his job, and that the Company owned the house. Moreover, the IJ noted, Zhang had not corroborated his testimony with a letter from either his wife or his mentor He, but even if he had done so, this would not have discharged his burden of proof on this count. Finally, the IJ held that Zhang had provided no evidence that he was tortured in China, defeating his claim for protection under CAT. The IJ granted Zhang voluntary departure.

### D. Motion to Reopen

On July 26, 2005, Zhang filed a motion to reopen his removal proceedings claiming that he could state new facts and provide documents that he could not have been presented at the prior hearing. The main piece of evidence was a letter from He dated March 25, 2005, which generally corroborated Zhang's testimony.[6] It also provided additional background related to the recent death of Zhang's father and the government's refusal to provide compensation for his death, which He claims is evidence

---

[6] Zhang claims that He was unwilling to write on his behalf earlier, due to threats made by the government to He's business interests.

that the government is still "going after" Zhang.[7]  The other new items of evidence submitted by Zhang were (i) He's Hong Kong ID card; (ii) a business license for the Company; (iii) a shareholding structure certificate for the company; (iv) sections from the criminal procedure code of China; (v) a forensic report on the death of Zhang's father; (vi) a diagnosis report on the same; (vii) Zhang's notarized birth certificate.  The BIA denied the motion to reopen on the grounds that it was filed more than 90 days after the BIA's decision, in contravention of 8 C.F.R. § 1003.2(c)(2).

## II.  Discussion

We review the BIA's denial of a motion to reopen for abuse of discretion.  Maryam v. Gonzáles, 421 F.3d 60, 62 (1st Cir. 2005).  An abuse of discretion will be found "where the BIA misinterprets the law, or acts either arbitrarily or capriciously."  Chen v. Gonzáles, 415 F.3d 151, 153 (1st Cir. 2005).

"There are at least three independent grounds on which the BIA may deny a motion to reopen."  INS v. Abudu, 485 U.S. 94, 104 (1988).  It may hold that the movant (i) has not established a prima facie case for the substantive relief sought; (ii) has not introduced evidence that is material and was unavailable during the original proceedings; or (iii) is simply not entitled to a discretionary grant of relief.  Id. at 104-05.  See also 8 C.F.R.

---

[7]  Neither He's letter nor the other documents submitted with Zhang's motion to reopen provide any evidence as to why Zhang would be entitled to compensation for his father's death.

§ 1003.2(c)(1) In most circumstances, a motion to reopen must be filed within 90 days of a final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). An exception to this deadline is made for evidence based on changed conditions in the country to which removal has been ordered, "if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii).[8]

In this case, it is not disputed that Zhang missed the 90-day deadline. Zhang instead argues that the BIA should have applied the equitable tolling doctrine to extend his filing period. This doctrine "provides that in exceptional circumstances, a statute of limitations may be extended for equitable reasons not acknowledged in the statute creating the limitations period." Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004) (citations and internal quotation marks omitted). The doctrine is to be "sparingly invoked." Jobe v. INS, 238 F.3d 96, 100 (1st Cir. 2001) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

The equitable tolling doctrine "is read into every federal statute of limitation," Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946), but "deadlines that define the court's jurisdiction may not be equitably tolled." Neverson, 366 F.3d at

---

[8] Though Zhang did not argue for such an exception, the BIA held that his new evidence in any case did not establish changed circumstances in China so as to permit it.

-9-

40; see also Soriano v. United States, 352 U.S. 270, 276 (1957). We have not yet decided whether the motion to reopen deadline is jurisdictional, and therefore whether it can be equitably tolled. See Joumaa v. Gonzáles, 446 F.3d 244, 246 (1st Cir. 2006); Chen v. Gonzáles, 415 F.3d at 154 n.3. We need not do so here.

Zhang did not raise his equitable tolling argument before the BIA. Indeed his motion to reopen made at best passing reference to its untimeliness.[9] Zhang therefore failed to pursue this remedy below, and we "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1). Because Zhang did not exhaust all of his administrative remedies regarding his equitable tolling claim, we lack jurisdiction to adjudicate it. See Joumaa, 446 F.3d at 246 (declining to decide whether the equitable tolling doctrine applies to an untimely motion to reopen because petitioner did not argue the issue before the BIA).

We also note that even setting aside the issue of untimeliness, the BIA still did not abuse its discretion by denying

---

[9] Zhang concluded his BIA motion to reopen by stating that "[i]n light of the newly discovered material information, the respondent respectfully requests that this Honorable Board reopen his removal proceeding." It would be quite a stretch to say that this reference to "newly discovered material information" addresses the fact that his motion was untimely, and in any case, Zhang does not brief this or any other argument regarding his failure to raise equitable tolling before the BIA.

-10-

Zhang's motion to reopen. Of the documents Zhang submitted with his motion to reopen, only the letter from He was arguably unavailable at the time of Zhang's original proceedings, and its materiality to the case is minimal.[10] Zhang does not show that the new evidence regarding withholding of compensation after his father's death now establishes a prima facie case for relief, and even if it did, the BIA still had discretion to deny the motion. Zhang does not argue that the BIA's decision to do so was arbitrary or capricious. See Chen, 415 F.3d at 153. Finally, the BIA's failure to equitably toll the deadline when Zhang did not urge it to do so -- nor have we ever held that it even could do so -- was certainly not a misinterpretation of the law. Id.

In sum, Zhang may not pursue his equitable tolling argument before this Court because he did not raise it before the BIA. He has presented no other legal basis to excuse the untimeliness of his motion to reopen. Finally, even had the motion been timely filed, the BIA still did not abuse its discretion in denying it.

### III.  Conclusion

For all of the foregoing reasons, we deny the petition for review and affirm the decision of the BIA.

**Affirmed**.

---

[10]  Indeed He's letter serves mainly to corroborate Zhang's testimony, but the IJ explicitly stated that even with such corroboration Zhang could still not discharge his burden of proof.

-11-